Case number 21-32-44 C K v. Bd of Ed Sylvania Cty Schl Dst Oral Argument not to exceed 15 minutes per side. Mr. Balazs for the appellate. May it please the court. My name is Paul Balazs and I represent C K and his The issue before the court today is whether or not a child who has the demonstrated potential and the demonstrated capability to read at grade level is entitled to special education services that are reasonably calculated to allow him to do so. The S L R O concluded that he had demonstrated that capability, that he had not received appropriate services that were calculated to allow him to read at grade level, that the parent's determination to provide those services independently were reasonable and justified and that consequently the district had failed to meet its obligation to provide FAPE by providing lesser services that were inadequate and that the parents should be reimbursed for the cost of the services that were provided. I have a question. So the Supreme Court's opinion in Andrew F says that an IAP should aim for grade level advancement only when it's a reasonable prospect for the recognition, a reasonable prospect of grade level advancement. If the child has demonstrated that he is capable of meeting the criteria here, reading at grade level. But I wonder, I mean, it's, it's reasonable. So if you've, I wonder if demonstrated capability is the Let's say, let's talk about math and let's say that with eight hours of one-on-one tutoring every day, the child could perform at grade level math. So they're capable of getting there if they work at it eight hours a day, five days a week. But an education involves more than math. So do we, when we think about whether it's a reasonable prospect, do we have to think about reasonable, meaning the amount of effort required to get the child to that level and whether it's reasonable to expend, in my hypo, eight hours a day on one subject. So in other words, is reasonable prospect the same as capable with any amount of effort? Well, that's a very good question, Judge. And the, I guess the answer revolves around what is reasonable. And that likely will depend on the circumstances and will be different for every child as it's supposed to be under the Act and under the Supreme Court's guidance. So in this case, we're not talking about math, right? We're talking about the ability to and advancement. And you have to consider the ability to work and live as a human being independently and to make your way through school. Yes, so reading might be more important than math. Well, there's not a question, Judge, because, you know, as most lawyers know, they can survive without having very good math skills. But there's very little that you can do in the Your Honor, you know, the data is really almost irrefutable here. But isn't it fair for the school to say, look, this is important. We need to make it a priority, but we can't allow it to be eight hours a day. Like here, it seemed to me Sylvania was contemplating all these different things and trying to put essentially the puzzle together as to how to get CK as close to grade level as possible while not sacrificing these other goals. Because I agree with you, reading, critical. But these other things aren't just throwaways. I mean, hopefully there's a reason we went through school and did all these things. And so isn't that the balance they have to strike? If they had done it in a way that was reasonable, then... But what... I'm sorry to interrupt you. I apologize. What made it unreasonable? Because it seemed to me they followed the procedures. I know you take issue with that, but... I think this goes well beyond the procedures, Judge, and it has principally to do with the substance. Because if you look at what progress this boy made when he was left solely to the left, he was illiterate. He was just patently illiterate. So if you look at... Let's start with the second grade, which both the district court and the school district, in its brief, completely ignore. If you look at our Exhibit 10 and our Exhibit 35, which shows the testing that was done at the beginning of the second grade and the testing that was done at the end of the second grade, he started out at a pre-primer reading level. He didn't know the letters of his alphabet. Pre-primer is kindergarten and preschool. At the end of the academic year, and he had, by the way, a very dedicated teacher with a master's degree, a reading certificate, and a Wilson reading certification, a state certificate and Wilson. And at the end of the academic year, the testing showed that he had made zero progress. He was still at a pre-primer level. What year was that? Was that... Second grade. That was 2015-16. Okay. But 2017, it gets better, right? Well, I want to address that as well. But you start with that first academic year when with 20 minutes a day, he was functionally illiterate at the end of the academic year. Then you look at what he was able to achieve with what the parents provided, which didn't interrupt anything that the school district was doing, by the way. And within three months, he moved two academic years in his reading ability. And then you get to the third grade when, again, all he got was 20 minutes a day from the school district. And with Linda Mood-Bell, he advanced in his phonic awareness to above a fourth grade level. So he had advanced from the time that they started this in the summer after the second grade to the end of the third grade. He'd advanced four academic years. And then you get to the fourth grade, and I think that question is very important, Judge. What you're going to hear from them is that he made some progress. Well, they have gone out of their way to... And they've given you some data from their own testing. Now, one problem is that the record doesn't reflect, and they don't tell you, what their data, what their tests tested for, other than that they're reading tests. But more importantly, if you... I'm sorry to interrupt you. I appreciate all your points, but at what point are we... I mean, one of the things the Supreme Court's been clear about, and I think our circuit as well, is we shouldn't be micromanaging these schools and the school boards. And they know, you know, they know, if they work together with the parents, if they do all these kind of preliminary things, then courts should stay out of it. And the level of deference has thrown me for a complete loop. Like, I can't figure out which way is up and down. But at the end of the day, shouldn't we, if they followed the procedural requirements, give deference? That's how I understood the law. And tell me what I'm misunderstanding to their substantive recommendations. Well, there's two points I would make. The first is that there wasn't any progress in the fourth grade. And there was significant regression. So that means, and what you will hear is that there was progress, but the test results that the district will point to were showing that he was reading at a second grade level as he was about to go into the fifth grade. As opposed to, and that's without Linda Mood-Bell, right? But can I ask you, just to get back to that, and then I do want you to answer my other question, but it seems to me, like, I'm just being honest with you. I'm not equipped to go in and judge that and look at their test results and say, these aren't credited. Should courts be doing that? No, they shouldn't. And that's where the SLRO comes in. Because the SLRO is an expert in this. Or at least presumed to be an expert. But isn't the IHO too? And isn't the school? I mean, you see what I'm saying? Each level they seem to be. Well, but in this circuit, at least, Judge, and I think in pretty much all circuits, the determinations of the SLRO are, the deference is to be given, where there's a conflict, deference is to be given to the determination of the SLRO, not the IHO. And what's the case for that? It's in my brief, Judge. I'm sorry. That's fine. We'll find it. But there isn't any question about it. I think Thomas is one of them. There are several cases out of the circuit that say that the SLRO's determination is the one that's to be given deference, not the IHO. What about the District Judge's criticisms of the SLRO and the standards that were used and just some of the comments that were made? What do you make of those? He's simply wrong. I think that the judge just didn't like the determination. I mean, he, I think, wrongly criticized the SLRO. First of all, she certainly made a citation error. But if you compare the language that the judge criticized with the language in which she said, there's no difference. There's no discernible difference in what she said in that paragraph. And she had cited Andrew F. 47 times. There was only one that he criticized. And she quoted from the language. She talked about potential being one fact that it has to be considered. I mean, she was right on consistently in following Andrew F. to a T. But the judge criticized that one. And the others were just, the other criticisms were just inexplicable. I mean, he determined that her order required some specific outcome. In other words, that he must be reading a grade level. That's not what she ordered. What she ordered and what Andrew F. requires is that the district provide services that are reasonably calculated to enable the child to have an opportunity. And in this case, she said that he had already demonstrated the potential with appropriate services. And so that, and then he also said that he had recognized that this child was capable of doing that. I'm going to change gears just slightly on you. Is LMB a supplemental service to the regular class instruction? Or is it, do you understand what I'm asking? It could be considered a related service, Judge. And that's something the district has to provide, is a related service. But, or it can also be considered just a private placement. I mean, either way, the outcome is the same. It's a service that must be provided if it's not. So I understand that. What I'm trying to understand is a lot, our circuit is implied at the very least that, and now I'm getting to a change of placement, is that the IEP is something greater than the placement. Does that make sense? So the IEP includes all the things along the continuum they mention in the regs, which is regular classes, special classes, special schools, home instruction. And then it says it must make for supplementary services to be provided in conjunction with regular class placement. And what I'm trying to get at is, is the LMB supplemental or is it part of the continuum? That's what you mean, Judge. The placement was in the Sylvania schools, at this particular elementary school. That's the placement. And then on top of that, what services does it get? So one of them was an intervention specialist. That's an additional service that's part of the placement. Except it was only getting 20 minutes a day. And those 20 minutes of that LMB shown to be deficient. I mean, without them, he was not learning how to read. So is it supplemental then? Well it's, I don't know if supplemental is the right word, Judge. It's part of the services that are required in order to allow the child to address the disabilities that have been  Okay, thank you. So I don't know if it does it. We can get you on. Go ahead. I think we might as well. I just wanted to ask, so if that's right, that the placement is in the Sylvania schools, then does that affect the question? The stay put argument? Yeah, the stay put argument. That's the label I was looking for. Because it's part of the placement. I mean, the placement is a location. But then there are services that are part of that. And those services are all subject to stay put. So you're saying it doesn't matter. You call it services. You call it a placement. It doesn't matter. The stay put regulation applies to all of it. That's correct. But then wouldn't you say the stay put regulation applies to the entire IEP? Ordinarily, yes. Unless, the stay put ordinarily would apply to the entire IEP. That's correct. Unless what? Well, unless there has been agreement, and this is where the state's regulation comes in. If there has been agreement between the state and the parent to some change in that placement including the services, then the stay put applies to whatever that change is. So then, current educational placement is the IEP in your mind? Yes. But the IEP is broader than that. The IEP, I see your point. It's a really hard question. It's probably unfair to ask. Okay. That's fine. Thank you very much. Am I out of time? I understand. Time to sit down. In terms of the school district's position that he couldn't just leave the classroom for all this time and miss out on math and socialization, what is your response to that? I mean, they presented her with three alternatives where he could have gotten DLMB, I believe. What's your response to those concerns? Well, a couple of things, Judge. The first is that they were never presented in the form of an IEP. They were never included in any IEP. And under this Court's decisional law, they can't even be considered unless they actually are put in an IEP and then the parent knows exactly what they are and that it's actually being offered by the district. In this case, that never happened. I mean, they were offered, they were put into this summary document that was presented to the parents two days after school started. The IEP team was there, but it was a brand new set of teachers who knew absolutely nothing about this child. Nothing. And as soon as they walked into the room and sat down, they were told that what they were requesting was unnecessary, not required by FAPE. What they were already doing was already providing FAPE. Now, how do they know that when they haven't even started working on the IEP, when the people in that room don't even know this child yet because it's the second day of school? And none of that has been yet provided in an IEP, which they didn't even start working on until two months later. So, I'm sorry we keep taking so much time, but what you're saying is as a procedural matter under this Court's case law, they would have had to present these alternatives one at a time? Here's our IEP, so there are these three alternatives. Here's our IEP, we'll talk about this one. No, they actually have to have the IEP judge. That's what this Circuit's case law says. Right, but they're trying to offer the parents three alternatives. So if I wanted to do that as a school district, I would have to formalize IEP number one, my favorite option. I'm the administrator at the school. Present it to the parents, see if that works. If not, we'll do alternative two. You can't just negotiate with the parents, sort of like, here's three things, let's see whether that will work, and then we'll put it in the IEP? Under this Court's case law judge, those items have to be put into an IEP. Otherwise, they're not really being offered. But the more important point is that what was offered to the parents in that initial document was, as their regional special services administrator acknowledged in her testimony, nothing more than what was already being provided. She characterized it, in response to my question, as a minor tweak of what he had been provided over the last previous few years. And the parents had said, in that same meeting, that if the district was prepared to offer two hours a day of intervention, coinciding with what had been recommended by CK's treating neuropsychologist, Dr. Bowers, who had treated about 300 dyslexic children, including many co-morbid with autism. They said, if the district were prepared to do that, they would certainly consider it. But that never happened. Instead, they offered these, you know, they just called them a different name. And by the way, most of the ones, apart from being vague, you know, maybe he could have services at this hour. Maybe he could have services at that hour. It depends on what else is going on. There was absolutely no certainty, even to the limited stuff that they were offered. And most of those would have required taking him out of class, other classes besides math. Thank you. You'll still have your rebuttal. Good morning, Your Honors. My name is Sean Nelson. I'm appearing on behalf of the Board of Education of the Sylvania City School District. May it please the Court, the primary issue here is whether the district, sorry, whether appellant has demonstrated that the district failed to provide CK with FAPE in his IEP. As this Court and as your questions illuminate, CK's IEPs had more than one goal. It wasn't just a reading to coding goal. It was social communication, writing, executive functioning. And a district, when they're formulating their IEP, as Andrew F. has provided, they have to make sure the IEP is reasonably calculated to enable a student to make progress appropriate in light of his circumstances. Do they consider past practice, like your friend points out, that when CK was involved in LMB, he progressed by four levels or whatever the metric is. Why isn't that relevant to the school and why wouldn't they continue something that was helping so much? Your Honor, I don't think the school, the school's not arguing that it's irrelevant. The school's arguing that when you take into account all of the data each year, the school's required to have an annual IEP meeting to address the student's progress, address the progress on the underlying objectives of each goal, that you're taking a holistic review of the data. And so while we're taking a review of the data, we're also taking data from Linda Mood-Bell while the district does contest the reliability of that data, for reasons I can get into, but they also look at the progress. Can I just get a hypo? I'm just curious. What if a parent came to you and said, look, I can teach my kid math. Like, I get 8 plus 8 is 16. I don't know how to teach them how to read. So what I need is abandon the math stuff and do more reading. Would the school, how would that work in the environment? Would they have to consider it? So a school, so in order to be eligible for an IEP, first the school undertakes an evaluation to determine an eligibility category. And in that evaluation, the school psychologist lists all of the student's needs, and then that is taken to the IEP team to actually formulate what goals and what objectives will meet those needs. And so to the extent if there were a math need, it is the school's obligation to provide that. Even if the parent can say, I can teach that at home, it is the school's obligation. And that would be the school's obligation for all of the goals and objectives. Right, but for CK, he didn't have a math need. I mean, all kids need to learn math, but he wasn't grade level, he wasn't behind in grade level. Right? So I think Judge Lepar's question is, so what if the parent says, my child is behind, drastically behind in reading, but at grade level or above in math, and also I, the parent, am a mathematician, so I can just teach him what he needs to know in math, off hours, free, but we really need some help in reading. I think that's Judge Lepar's question. It's better worded. Thank you, Your Honor. I just want to make sure I answer your question to your satisfaction. Thank you for the clarification. The district's obligation for students with disabilities is not only to service their IEPs, not only to address the specially designed instruction in order to achieve those goals, but there's also core academic goals. And so if a parent comes to a district, as CK's parent here, and says, I know we have all of these goals, don't address those. I want you to, not don't address, but don't focus on those. I want two hours a day, Linda Moot-Bell, I want four hours a day of reading services. We can't rob Peter to pay Paul. The district, as you all asked in your questions for appellant, there is an inherent balancing act with these goals. You can't rob Peter to pay Paul? Or you don't think that's good educational policy? Is there something forbidding you from doing that? Or you just think that's not the best way to educate a whole child, which I'm not disputing, I'm just asking. Well, the district has its obligations from the Ohio Department of Education regarding core instruction and core standards. And so the district has to implement those, including for students with disabilities. But the district also has all of these other obligations under IDEA that it has to satisfy. And again, this isn't a single goal IEP, there are multiple goals there. Can I ask you about, while we're changing gears, can I ask you about the current educational placement? So you agree that when the SLRO ordered LMB, that's part of the IEP at that point, right? Am I right to think about it that way? So why wouldn't it be a change in placement? In other words, if I took someone from an, if I was the SLRO and I took someone from an ordinary class and put them in a special class, it seems to me that would be a change in placement. So why isn't LMB a change in placement? And sorry, Your Honor, if I could expand on my answer. So when I'm agreeing, I'm saying, so the stay put requires, in order for stay put to change, there needs to be a change in placement. But based on, first, what was requested by... What is a change, I'm sorry to interrupt you, but what is a change in placement? I guess that's what I'm getting at. The laws and regulations talk about a change in placement, as you just articulated, from regular education classrooms, special education, special school, outside. And so the SLRO's, I'm sorry, outside of school, the SLRO's decision while it orders appropriately intensive services and it mentions LMB, the district already provides reading services in the IEP, the district... But does that matter? I guess if I have a class, let me go back to class versus special. If I have a class and it provides reading services and the SLRO says that's not sufficient for CK, he has to have special reading, tutoring, after school, during school, whatever, is that a change in placement? Depends on the wording of the language. And the SLRO was unclear. They said intensive services and mentioned LMB. The SLRO's decision, although it's 100 pages long, does not say he needs to be removed from class privately and receive one-on-one tutoring. And that within, you have the backdrop... But isn't, I'm sorry, by saying LMB, isn't he at least implying that that has to happen in some fashion? So the district has an intervention specialist that is trained in Linda Mood-Bell. And so that district intervention specialist could provide Linda Mood-Bell services per the IEP in the school, which would not be a change in placement. And did that happen after that decision? No, because we're in stay put. So we are in stay put and the district... But you're only in stay put if the SLRO made a change in placement, right? Or am I just not understanding that? So you're conceding that you're in stay put because the SLRO ordered the Linda Mood-Bell? So I'm conceding that the 2017-2018 IEP, which was amended in September of 2018, is in stay put. I'm sorry, it's a mouthful. Is in stay put. And the SLRO's decision is unclear about the setting in which those other Linda Mood-Bell services would provide. And so the SLRO did not clearly order a change in placement. And so the stay put IEP, while this litigation is pending, is that 2017-2018 IEP. But the 2017-2018 IEP, to follow up on Judge White's question, didn't say, okay, so the SLRO has said we have to provide some kind of intensive services like Linda Mood-Bell. Therefore, but we don't want him going over to the church next door for two hours a day. Therefore, we're going to have our own specialist work with him. That didn't happen. You didn't implement what you're calling the stay put procedures by using your own in-house Linda Mood-Bell trained person. It was implemented by continuing to send him to Linda Mood-Bell next door at the church. I, forgive me if I don't answer it appropriately. Because I may not understand, so. So the stay put IEP is the 2017-2018 IEP. The only way that that IEP is updated or changed is if the SLRO orders a change of placement. He did not. I thought he did. He did not. She, I'm sorry. I did not order a change in placement. And which is, I think, more thoroughly articulated in our brief was because she ordered intensive reading services, mentioned Linda Mood-Bell, but didn't mention the location. And so it's unclear. And your honors, just for the record, the district did ask for a declaratory judgment on this issue as a threshold matter, but appellant argued against having that decided on a threshold matter. So the, go ahead Judge Whitehouse. You're saying that she didn't order anything. No, I'm not saying she didn't order anything. I'm saying she didn't order a change of placement. What did she order? In general or with regard to this issue? With regard to this issue. With this issue, the SLRO ordered appropriate reading services and there was a mention of Linda Mood-Bell in the order, but I don't believe it's clear, but did not list the location, did not change the placement, did not say, did not order Linda Mood-Bell services for two hours a day at this location. Do we have authority, just out of curiosity, if we're unclear, to remand to the district court, to remand to the SLRO to clarify what she ordered? Does that authority exist to courts or no? I don't believe it does, your honor. So, you're saying that because she didn't order something, she made findings, she said what you were doing was deficient, she ordered that sufficient reading services be provided, but because she didn't say where, you were able to ignore it? We're not able to, I wouldn't characterize it as ignore it, I would say because of the lack of clarity and because of the lack of an order to change the placement, the stay put IUP while this case is pending is the 2017-2018 IUP. Can I follow up on Judge White's question, which is, if she says, look, the SLRO says the school should give intensive reading programming and mentions LMB, assume you're not giving intensive reading programming, you can correct me if I'm wrong, you might say we are, but it seemed to me the SLRO thought you weren't, and so if she does that and says you have to give intensive reading program, don't you have to change the IEP at that point? No your honor, the IEP is in stay put as long as the litigation is pending, unless there's an order by the state agency for a change in placement. But I thought if the SLRO, so I thought 34 CFR 300.518 A and D say, and you should correct me if I'm wrong because you're the expert, that the SLRO, if she orders a change in placement, a change of placement, that then you have to do it. Am I wrong about that? That's correct your honor, but the SLRO did not order a change in placement. Does she have to use the words change of placement or how does it occur? No, but she has to change, her order has to change the placement. Saying appropriately intensive services and mentioning LMB, that's not a change in placement. Can I ask just a factual question, like I may just be confused about what happened on the ground. When the SLRO issued her order saying you must provide appropriate reading services and mentions Linda Mood-Bell, how did the district respond to that? I thought that CK continued to go to the services at the church after that order, so in other words, you're now, you're still in place. The way you implemented the 2017 order was to continue to allow him to be pulled out, but maybe that's false, maybe I just have a factual misunderstanding. Your honor, if I may, because the SLRO's order did not order a change in placement, the IEP, the stay put IEP is the 2017-2018 IEP, so nothing ordered by the SLRO was implemented. So, how was that, so he, so factually he continued to be in, he started being in school six hours a day, or you allowed him to be removed from the classroom two hours a day by his parent to continue? During fifth grade, SR's mother continued to remove him from school for 90 minutes a day. And you feel like that was sort of in violation of the IEP, of the stay put IEP? Yes, absolutely. Okay, that makes more sense to me. And your honors, before I conclude, you did mention deference and you asked which case in this circuit addresses deference, that's the Barilovich case? Yeah, and who gets what deference? Yes, and so if there are no procedural violations, which there weren't here, not only does the district, not only is the district entitled to deference, but with regard to deference at the SLRO level, that deference is only owed when educational expertise is relevant and where the decision is reasonable. So it goes all the way down to the school board here is your argument, because there were no procedural violations? Yes, your honor. Okay. And what is your response? I mean, the district court just dismissed everything she said. Counsel argues that that was unfair and unreasonable and in fact, I mean, just focusing on a citation to a third circuit case or an opinion wasn't really proper because the totality of the opinion properly applied the Andrew case and, you know, didn't depart from what she was supposed to be doing. Your honor, there are numerous errors in the SLRO's opinion and I'll mention a few, but Appellant's characterized as a mere citation error. Placing words of an advocacy group or more than one advocacy group in the mouth of the Supreme Court is not a mere citation error. If I were to do that, if my brief were to do that and your clerks told you that's not actually the quote, you would seriously question my entire brief and whether I knew what I was doing. And so I don't characterize that as a mere citation error. But in addition, the SLRO attributed all of CK's progress to Linda Mood-Bell tutoring, which Appellant's own expert conceded is impossible to ascertain, and in which in fourth grade CK made progress in the absence of Linda Mood-Bell. And then finally, I just want to correct one argument that Appellant made. The SLRO did grant relief that was not permitted by the law. The SLRO granted perspective relief with regard to a specific outcome. The SLRO ordered the district to remedy a two-year reading deficit and ensure grade level proficiency. Those are orders for a specific outcome and that flies in the face of the language in Andrew F., which held that, at least concluded that the IDA cannot and does not promise any particular outcome. No law can do that for any child. So for these errors, and I believe we cited many other errors in our brief, the SLRO's decision was clearly unreasonable and owed no deference. But she made, prior to that, she made a finding that he was capable of performing at grade level and it was just a matter of giving him those services. I mean, you're somewhat taking it out of context, right? She didn't just say, give him the services and make sure he gets to grade level. She said, the evidence shows that he's capable of performing at grade level, that this method will get him there, the method you're not giving him, and therefore, I'm ordering you to give him the services that he needs to get to grade level. And Your Honor, the district questions, even initially, the SLRO's lack of deference to the impartial hearing officer, who is the fact finder? And the hearing officer found the exact opposite of that after hearing that evidence. You're saying the ILO found that he was not capable of getting to grade level? The IHO found that based on the evidence, that grade level advancement wasn't the appropriate goal. So that gets back to the question I opened with, which is, how do you read, I can't remember, Andrew F., when it talks about what's reasonably attainable or reasonably achievable, if a child is capable of reading or doing math or whatever at grade level, is that goal by definition reasonably attainable? Because the Supreme Court says, grade level advancement could be the goal, but it's only the goal when it's reasonably achievable or reasonably attainable, whatever their words were. And I think the appellate wants to say, if you're capable, then it's reasonably attainable sort of by definition. What's your response to that? Yes, Your Honor. I appreciate your point, and it's especially well taken in a case like here where we have multiple goals and we also have general education curriculum. And to say, well, a student could achieve grade level if they were provided four hours a day, five days a week of a specific service. However, no, I don't believe that that is what the Supreme Court meant when it said it has to be reasonable in light of their circumstances. In addition, the court held in Andrew F., they provided that when a student is not fully integrated into the regular education classroom, grade level advancement isn't necessary, isn't always necessary. However, the IUP, it must be appropriately challenging. And here, that's what we have. One more. I'm sorry. What do you say to Appellant's argument that this is reading? Like, yes, you can get through life without the ability to do a bunch of math. Not so much. You can't learn history very well if you can't read. So what do you say to that? This is the most foundational skill. The district doesn't dispute that reading is important. The district doesn't dispute that a lot of core skills are important. However, that doesn't make what was demanded by the parent. In this case, that doesn't make that reasonable under these circumstances. Can I ask one more? I'm sorry. I'm going to go back to the LMB order, which is just throwing me off. So here's the language I read. Therefore, I'm reading from what I believe is the SLRO's order it is. Therefore, the IHO decision denying the parent reimbursement for private LMB tutoring is reversed. In addition, the IHO decision that the notice of absence is issued. That's the thing. So I recognize what she's saying here is that you're entitled to reimbursement. She's doing the reimbursement part. But where is the language you're talking about? Because this seems to say that she thinks LMB is necessary. Right? Your Honor, with the 100-page opinion, I can't rifle through it at this moment. Let me read you one more sentence. Parents is entitled to reimbursement for the private programming and tutoring expenses during the pendency of this litigation, including ESY, 2019, LMB, summer programming and transportation costs, and any private tutoring expenses during the 2018-2019 school year. So why isn't that sufficient to say there's a change in placement? Your Honor, that's an order for reimbursement, not for a change in placement. That's an order for reimbursement for services that the parent unilaterally undertook, a private placement, and then they can bring a claim for reimbursement for those services. That is not an order. That's different in kind. Absolutely. Yes. I'm so sorry. Judge White, do you mind? Go ahead. What's the authority to ask for reimbursement for services that aren't part of your IEP? I thought you got reimbursed for services that were necessary because they're part of your IEP, and you can get them if they're not providing you a FAPE, right? So if you go out and you hire your own person, you sort of do that at your own peril, but then if it's later determined that it's part of providing you with a FAPE, then you get them. And the way we determine whether it's in the IEP is to implement the goal of providing a FAPE. So I'm back to Judge Sipar's question. Either the SLRO, by ordering reimbursement, was just acting like ultra-virus, or there's some authority for her to order the reimbursement, which I thought would come from the fact that she determined that they weren't providing a FAPE, and therefore she was changing the IEP to meet the goal of providing a FAPE. Yes, Your Honor. Maybe I'm just confused. So appellants in their amended due process complaint and the post-hearing SLRO brief requested reimbursement for Linda Mood-Bell services. That's what was requested from the SLRO. And the authority that they invoked for that was just like, gosh, it would be nice if the school used its prom fund to pay for this. Surely that reimbursement, there's a statutory authority that they were trying to invoke to get the reimbursement. Otherwise, they have no claim for reimbursement. Yes, Your Honor. The IDEA does provide for authority for reimbursement, and this court in Nable has articulated the reimbursement standard. But doesn't the reimbursement, you're only reimbursed for things that you need in order to get a free and appropriate public education, right? Yes. I can't get reimbursement for tap dance lessons for my kid, right? No, Your Honor. Reimbursement requires a parent to show that the district violated the IDEA and denied FAPE and that the placement was proper. So then I just don't understand why your answer to Judge Thapar's question when he says, when she orders reimbursement, isn't she in effect saying, I'm changing the IEP? I'm ordering, like, she must have been doing that or she was acting without authority. Your Honor, and again, the district submits that we have serious questions regarding this SLRO order. SLROs know how to order change of placements. They know how to change IEPs. An order for reimbursement is not an order for a change of placement. What about this one? Now I'm throwing things at you, I recognize. Thus, the parent is entitled to reimbursement for all private reading services, including the full payment of LMB for 2016 to 2018. Okay, let's assume that's wrong, okay, and you win on that. Now let me go on. That prevented additional summer registrations and intensively remediated CK's grade-level reading skills deficits pursuant to CK's IEP goals, as well as any 2019 summer reading programs provided during the pendency of this litigation. So why aren't, I mean, why isn't the, so she could be, you agree, she could be totally wrong. The whole order could be a fraud. But if she orders a change of placement, you have an obligation to pay it, right? We have an obligation to change the placement, to update the IEP. And cover the costs. Insofar as the order is clear, which... Yeah, no, I get your point. I totally get that. So if the order is unclear, who should bear the brunt of that? Why should the plaintiff? In other words, if we do a sloppy job as judges, why should the plaintiff, because now you're saying someone has to bear the brunt of the sloppiness. How do we figure that out? Your Honor, the law is clear regarding what is required to change a placement while litigation is pending. I mean, it's clear that it requires a change of placement. The law clearly defines what a change of placement is. And so that's what a district is empowered to do. But let's say we, okay, so I'm sorry. This is my, I promise this is my final question. Let's say we agree with you that this thing is sloppy, it's wrong, everything else, then it seems to me if we agree with all that, we could also agree that she didn't know, she was trying to order a change of placement and might not have used the magic language. And so what do we do with that? And, Your Honor, the district court, that is the very reason why the school district asked the district court for a declaratory judgment on this very staple issue. And that's the reason that the district asked the lower court to decide that on it as a threshold matter. Yet Appellant argued against it and said that we should wait and we should litigate this out in order to reach that determination. So could we remand it just for the district court to decide that issue now that it's? I don't believe that issue is required. I think it's fully briefed before you at this point. The IP has been unstable. The court has been ticking all this time. Yes, Your Honor. Your damages, what you might have to pay, have been occurring all this time. So I know you asked for the declaratory judgment and you said you wanted it to be expedited. But I see that in your briefing, but I don't see that in the record below. Was that? There were conferences between the judge, Appellant's counsel regarding our request for that. Anything else? No, thank you. Thank you very much. May I conclude briefly? Yes. I'm sorry, never mind. Just briefly, CK was provided FAPE and was not entitled to ESY, which I know we didn't address. The IEP was reasonably calculated to enable him to make progress appropriate in light of his circumstances. And importantly, he did in fact make progress not only on his reading goal, but on all of his other goals. And as a result, the district requests that this court affirm the lower court's ruling. Thank you, Your Honors. I appreciate your time. Thank you. Thank you. I'm not going to go into the stay put issue, because I think the court has a pretty firm understanding of that. If you have other questions about it, I'm happy to answer them. Why, I mean, if they don't use the change of, of course I've got one, if they don't use the change of placement language, which everyone knows how it works, I mean, you know, we could get up to speed on it. Why shouldn't we expect the SLRO to use the magic language so the school knows, versus talk about reimbursements and everything else? Which you did. It was just what you read, Judge. That's the language that you see in the stay put decisions, that during the pendency of litigation, that's what the, there's also a statute under the, under the, language under the federal statute that says the same thing, during the pendency of judicial proceedings. But that assumes the IEP is the same thing as a change of placement. Well, Judge, the placement and the IEP are one and the same. But our circuit's implied otherwise. Well. And pretty clearly. Let me give you, let me just give you an example, Judge. If you have a student who's mainstreamed, right, and the only services that they need are, could be somewhere else, could be, I mean, it could be the being pulled out for speech therapy or being pulled out for chronic intervention. So if that's not being provided and an SLRO orders it, then that's the stay put. They have to start providing that. Even though the location isn't changing, they have to start providing that service. It's part of the IEP and therefore part of the placement that the child is entitled to, part of the IEP services that are entitled, that the child is entitled to. That's the core of stay put. What special needs services does the child, is the child entitled to? And either it's in the IEP, in which case it's stay put, or else either an IHO or an SLRO orders it, in which, again, it's part of stay put. And I also want to address this issue of the balancing act and having more than one goal. Now, first keep in mind that the SLRO also ordered reimbursement for services other than those, for Lindenwood Bell services other than those that were in the fifth grade. The fifth grade is the only instance where, well, the end of the second grade, he was pulled out half a day in order to begin those services, and the district acceded to that. They didn't have a problem with it, although they may have signed an agreement with, you know, the threat of tourancy hanging over the parent's head. But when you get to the fifth grade and a determination was made to provide those services during the first portion of the day, as you pointed out, Judge, there was no IEP need for math. For the reasons that we discussed, math is not as essential. He had already shown himself above 90 percent of the kids in the class in math. And as far as the other services, the other IEP services, there weren't any others, other than those related to dyslexia, for which he was being pulled out. And those were the ones, at least as of the fifth grade, the only ones that were left were those that are at issue here with Lindenwood Bell. That's the only thing. So there was no balancing act to be done. And the record also shows that during that same meeting where all these options were offered, and this is in the record and it's not disputed, the parents asked, since he wasn't going to be in math class and the district was concerned about it, just give us somebody to work with him later on in the day or at some other point with his math to make sure he keeps up. And the answer was, they ended up not doing it, but the answer was as long as you drop your request for reimbursement, we'll do that for you. So they had no problem allowing him to have the Lindenwood Bell in the church during math class and would provide him with a math tutor as long as they dropped their request for reimbursement. Why couldn't he go to Lindenwood Bell during regular reading class instead of during math class? Well, it was only 20 minutes, Judge. The allocated time for reading class was only 20 minutes. Well, but you want them to be super flexible, but your client doesn't seem that flexible. Like it's got to be these two hours in the morning. Well, there was a reason for that, too. And the reason is that, well, first of all, you've got to remember that he's now, as a result of the regression in the second grade, now he's reading at a second grade level and he's going into the fifth grade, which is pretty complex material at that point. And so they've got to bring him up to speed very quickly. And this is in the record also. He's got an attention deficit disorder. And he takes the medication for it first thing in the morning. It takes a certain amount of time to kick in. Once he kicks in, that's when he's most focused and that's when he's able to best benefit from those intervention services. So it had to be done then. And the teachers agreed that that was the way that his day unfolded. So, anyway, just to conclude. I mean, look, the real issue in this case, from our perspective, is whether this child was entitled to services, whether he has a right to learn how to read at grade level. And really, to learn how to read, period. Because if what the district had done, starting in the second grade, where he went for an entire year and stayed at a pre-primary level, if Lyndon Mood-Bell services had not been there, there's no reason to believe that at the end of that summer, he would have regressed even further, particularly with his short-term memory defects. And then in the third grade, he would have still been at a pre-primary level or something not far above it. And then in the fourth grade, he would have been at the same level. The only thing that advanced this boy and allowed him to read at all was the Lyndon Mood-Bell interventions. And, you know, if you look at the testimony of Dr. Bowers, Lyndon Mood-Bell, you know, he sends kids to Lyndon Mood-Bell only when they have extremely intense dyslexia, and particularly those who are comorbid. Lyndon Mood-Bell has been collecting data for decades. And they have been working with Washington University and other, you know, leading research universities to track the neurological impact of what they do and their particular approach on the kids. And there's published research. It's been, you know, I mean, the results have been consistently positive for the kids in allowing them to learn how to read. And we respectfully submit that this boy had a legal right to learn how to read. Thank you. Thank you both.